## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

Eric Adams,

        *Plaintiff*,

    v.

City of Newark, et al.,

        *Defendants*.

Civil Action No. 20-17207
(MEF)(LDW)

**OPINION and ORDER**

## Table of Contents

I.    **Background**
    A.   **The Lawsuit**
    B.   **The Motion**
    C.   **The Court's Approach**
II.   **Summary Judgement Standard**
III.  **Pay**
    A.   **Federal Law**
    B.   **State Law**
    C.   **Analysis**
IV.  **Hostile Work Environment**
    A.   **Federal Law**
    B.   **State Law**
    C.   **Analysis**
        1.  **The Salary Complaint**
        2.  **Meetings**
        3.  **Summonses and Tickets**
        4.  **Laptop**
        5.  **Conclusion**

V.   <u>**Conclusion**</u>

                              \*     \*     \*

A former municipal employee came to believe that he was
discriminated against based on his age.

He sued his former employer and various supervisors, claiming
this alleged discrimination violated federal and state law.

The employer and supervisors have moved for summary judgment.

The motion is denied in part, and held in abeyance in part.

I.   <u>**Background**</u>

   A.   <u>**The Lawsuit**</u>

The former employee (from here "the Plaintiff"[1]) alleges he was
discriminated against by his former employer and former
supervisors (from here "the Defendants"[2]) because he was over 40.
<u>See</u> Brief in Opposition at 1.

The core of the claim: that the Plaintiff, because of his age,
was: (1) paid less, <u>see</u> Second Amended Complaint ("Complaint")
¶¶ 38, 46-48; and (2) faced a hostile work environment, <u>see</u> <u>id</u>.
at ¶¶ 72-74.  The Plaintiff also claims he was retaliated
against when he complained, and that he was fired as part of
this retaliation.  <u>See</u> <u>id</u>. at ¶¶ 60-68, 75-77.

   B.   <u>**The Motion**</u>

The Defendants have moved for summary judgment on the
Plaintiff's claims as to salary, hostile work environment, and
retaliation.[3]  <u>See</u> Motion for Summary Judgement at 24, 27, 34.

---

[1]  The Plaintiff is Eric Adams.

[2]  The Defendants are the City of Newark, and three City
officials --- Mayor Ras J. Baraka, as well as Eric S. Pennington
and Danielle A. Smith.

[3]  Toward the beginning of their motion, the Defendants say they
seek across-the-board summary judgement.  <u>See</u> Motion for Summary
Judgement at 4.  But the body of the brief only makes arguments
as to certain aspects of the Plaintiff's claims.  For example,
as to retaliation the Defendants press arguments only as to the
individual Defendants.  <u>See</u> <u>id</u>. at 34-39.

C.   **The Court's Approach**

After a description of the general standards for assessing summary judgment motions, see Part II, the Court takes up the merits of the Defendants' motion.

First, the Court analyzes the arguments as to pay discrimination.  The Court's conclusion: there is evidence on both sides of the ledger, and so summary judgment cannot be granted.  See Part III.

Next, the Court takes up the hostile work environment claim. See Part IV.  The Court's preliminary conclusion: it would be inclined to grant the Defendants' motion, but further clarification is required.

A brief conclusion, see Part V, explains the Court's approach to the retaliation claim.

## II.  **Summary Judgement Standard**

The Defendants, as noted, have moved for summary judgment.

Such motions should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Dupree v. Younger, 598 U.S. 729, 737 (2023); Cellco P'ship v. White Deer Twp. Zoning Hearing Bd., 74 F.4th 96, 100 (3d Cir. 2023).

"A factual dispute is material if it might affect the outcome of the suit under the governing law."  Canada v. Samuel Grossi & Sons, Inc., 49 F.4th 340, 345 (3d Cir. 2022) (cleaned up); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Such a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party[.]"  SodexoMAGIC, LLC v. Drexel Univ., 24 F.4th 183, 203-04 (3d Cir. 2022) (cleaned up).

In assessing a summary judgment motion, "a district court may not make credibility determinations or engage in any weighing of the evidence[.]"  Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004).  Rather, the court must "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor."  Canada, 49 F.4th at 345 (cleaned up); accord Tolan v. Cotton, 572 U.S. 650, 660 (2014).

III. **Pay**

The Plaintiff first claims that he was paid less than others because he was over 40.  See Complaint at ¶¶ 38, 46-48.  This, the Plaintiff argues, was illegal under both federal law (the Age Discrimination in Employment Act) and state law (the New Jersey Law Against Discrimination).  See id. at ¶¶ 87, 93.

The Defendants move for summary judgment on the ground that, because of certain background conditions, they were unable to pay the Plaintiff more.  See Motion for Summary Judgement at 24-27.

The Defendants' argument is taken up below, see Part III.C, after a brief introduction of the federal and state law in play here, see Part III.A and Part III.B.

A. **Federal Law**

The Plaintiff, as noted, sued under the Age Discrimination in Employment Act of 1967 ("ADEA").  See 29 U.S.C. § 623.

As in many areas of federal anti-discrimination law, ADEA cases are analyzed at the summary judgment stage with an eye to the "burden-shifting framework" first set out by the Supreme Court in 1973.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

Under this framework, a plaintiff needs to first establish some preliminaries.  These are "not onerous."  Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

For a claim of pay disparity based on age, the preliminaries include showing, among other things, that the plaintiff was: (a) above 40 and (b) paid less than relevant comparators.  See Gardner v. Ulta Salon Comstics & Fragrance Inc., 2024 WL 1110384, at *1 (3d Cir. Mar. 14, 2024); Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 644 (3d Cir. 2015); Swain v. City of Vineland, 457 F. App'x 107, 110 (3d Cir. 2012); Smith v. City of Allentown, 589 F.3d 684, 689 (3d Cir. 2009).[4]

If the plaintiff succeeds in making these showings, then two additional things are folded into the mix: first, a rebuttable presumption that the plaintiff has been discriminated against, see U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711,

---

[4]  There are other things that must also be established.  But they are not relevant to the Court's analysis here.

714-15 (1983); and second, a "burden shift" to the defendant ---
who is now obligated to "identify a legitimate non-
discriminatory reason for the [pay disparity]." <u>Smith</u>, 589 F.3d
at 690.[5]

At that point, if the defendant points to "a legitimate non-
discriminatory reason," then it is back to the plaintiff --- to
show "the employer's proffered rationale was a pretext for age
discrimination," <u>id</u>., a showing that all-but "merges with the
[plaintiff's] ultimate burden" of persuading the fact-finder
that the plaintiff "has been the victim of intentional
discrimination." <u>Burdine</u>, 450 U.S. at 256.

### B.   <u>State Law</u>

The New Jersey Law Against Discrimination was first enacted in
1945, <u>see</u> <u>C.V.</u> v. <u>Waterford Twp. Bd. of Educ.</u>, 255 N.J. 958, 968
(2023), and was amended in 2018 to sharpen its focus on pay
discrimination.  <u>See</u> N.J.S.A. § 10:5-12; P.L. 2018, Chapter 9,
Senate No. 104 "Diane B. Allen Equal Pay Act" (April 24, 2018);
<u>Perrotto</u> v. <u>Morgan Advanced Materials, PLC</u>, 2019 WL 192903, at
*1 (D.N.J. Jan. 15, 2019).

The statute, as amended, is referred to here as "the LAD."

It is a violation of the LAD for an employer to "pay an[] . . .
employee[] who is a member of a protected class [which includes
age] at a rate of compensation . . . which is less than the rate
paid by the employer to employees who are not members of the
protected class for substantially similar work, when viewed as a
composite of skill, effort and responsibility."  N.J.S.A. §
10:5-12(t).  An employer may generally pay a "different rate of
compensation" only if it demonstrates the "differential is made
pursuant to a seniority system, a merit system, or the employer
demonstrates" five specified factors.[6]  <u>See</u> <u>id</u>.; <u>Bento</u> v.

---

[5]  The first forces the second.  The rebuttable presumption works
as a bit of "practical coercion," <u>St. Mary's Honor Ctr.</u> v.
<u>Hicks</u>, 509 U.S. 502, 510 n.3 (1993), because if the defendant
does not come forward with a "legitimate non-discriminatory
reason," it will lose the case.  <u>See</u> <u>id</u>.

[6]  The five factors: "(1) That the differential is based on one
or more legitimate, bona fide factors . . . such as training,
education or experience, . . .(2) That the . . . factors are not
based on, and do not perpetuate, a differential in compensation
based on . . . any other characteristic . . . of a protected
class; (3) . . . the factors [are] applied reasonably; (4) . . .
the factors account for the entire wage differential; and (5)

Plainfield Pub. Sch. Dist., 2022 WL 17332215, at *7-8 (N.J.
Super. Ct. App. Div. Nov. 30, 2022).

Claims under the LAD are generally analyzed using the federal
"burden-shifting framework" described in Part II.A.  See Meade
v. Twp. of Livingston, 249 N.J. 310, 328 (2021); Battaglia v.
United Parcel Serv., Inc., 214 N.J. 518, 546 (2013); Zive v.
Stanley Roberts, Inc., 182 N.J. 436, 447 (2005).

### C.   Analysis

In this case, the back-and-forth between the Plaintiff and the
Defendants does not take place at the first step of the burden-
shifting framework.  For example, it seems to be common ground
between the parties, at least for now, that the Plaintiff was
paid less than potentially comparable younger workers.  Compare
Brief in Opposition at 18 with Motion for Summary Judgement at
24-27.

The Defendants implicitly focus their argument on the second
step of the burden-shifting framework --- they seek to offer two
"legitimate non-discriminatory reason[s] for the [pay
disparity]."  Smith, 589 F.3d at 690.[7]

The first of these reasons: there may have been a pay gap, but
it could not be closed --- because an across-the-board pay
freeze was in place for certain managerial employees, like the
Plaintiff.  See Motion for Summary Judgement at 26-27.

But there is evidence that pulls the other way.  The Business
Administrator got salary increases in 2019 and 2021. See Foner
Cert., Exhibit 3 at Newark 1116.  The Finance Director received
a 2019 raise.  See Smith Deposition at 121:21-24.  And per the
Plaintiff, in 2018 or 2019 the "vast majority of people within
city hall got raises," Adams Deposition at 132:25-133:14, while
he did not get one until April of 2021.  See id. at 131:5-11.

In short: the Defendants' "legitimate non-discriminatory reason"
for the pay gap, Smith, 589 F.3d at 690, is that there was a pay
freeze.  But there is a "genuine dispute" as to whether there
was one, and such disputes are for the jury to resolve, not the

---

That the factors are job-related with respect to the position in
question and based on a legitimate business necessity."
N.J.S.A. § 10:5-12(t).

[7]  The Court assumes for present purposes that, if proved, these
two reasons could excuse any pay disparity, and avoid liability
for the Defendants as a matter of law.

Court.  See Tolan, 572 U.S. at 656 ("[s]ummary judgment is appropriate only if the movant shows that there is no genuine issue as to any material fact") (cleaned up).

The Defendants' second argument: age discrimination could not have been a factor in setting the Plaintiff's pay --- because his salary was established in light of a "long-standing" policy and fiscal restraints on the City that required starting off certain managerial employees at the bottom of the salary range laid out in a 2003 executive order.  See Motion for Summary Judgment at 27.

This argument is a bit hard to understand.  The Plaintiff was hired in 2014.  See Foner Cert. Exhibit 3 at Newark 0053.  But the Defendants cite a 2003 executive order that speaks only to salaries in 2003, 2004, 2005, and 2006.  See Motion for Summary Judgment at 26; Harriot Cert. Exhibit K at 1.

The Defendants do not shed light on this discrepancy.  But perhaps the point is this: the 2003 executive order remained in place through 2014 when the Plaintiff was hired, and the executive order's closest-in-time starting salary (the one for 2006) established the Plaintiff's starting pay when he came on board in 2014.

This seems to make sense: per the 2003 executive order, the bottom-most 2006 stating salary for Assistant Finance Director (the Plaintiff's position) was $88,253, see Harriot Cert. Exhibit K at 1, and that was the Plaintiff's salary until April 2021, when he got a raise.  See Foner Cert. Exhibit 3 at Newark 0053; Plaintiff's Statement of Material Fact ¶ 13; Adams Deposition 131:1-25.

But if this is the Defendants' argument, it is not persuasive.

There is evidence that a person who held the same position as the Plaintiff was hired in 2007 --- at a salary of around $125,000.  See Foner Cert. Exhibit 3 at Newark 0480.  And for the same position, another person was hired in December 2008 --- at $125,000 or so.  See Danielle Smith Deposition at 53:20-25. And after the Plaintiff was fired, his replacement received a salary of about $123,000.  See Foner Cert, Exhibit 3 at Newark 0859.

What this adds up to: even if the 2003 executive order and fiscal restraints were followed as to the Plaintiff, there is evidence they were not followed as to others.  And an inconsistently-applied executive order, a reasonable jury could find, is not a "legitimate . . . reason" for a pay gap, Smith, 589 F.3d at 690, but rather the opposite: affirmative proof that

any pay gap was illegitimate. See generally Burton v. Clinger, 2023 WL 4399221, at *1 (3d Cir. July 7, 2023) ("Summary judgment is appropriate only when no reasonable jury could find for the non-moving party."); Ryan v. Burlington Cnty., N.J., 889 F.2d 1286, 1289 (3d Cir. 1989) ("[I]f the evidence is such that a reasonable jury could return a verdict for the nonmoving party summary judgment must be denied.") (cleaned up).

In short, neither of the Defendants' arguments is convincing; their motion for summary judgment is therefore denied as to the Plaintiff's pay disparity claim.[8]

## IV.  **Hostile Work Environment**

Pivot now to the Defendants' motion for summary judgement as to the Plaintiff's hostile work environment claim.

After laying out relevant federal and state law, see Part IV.A and Part IV.B, the Court analyzes the Defendants' argument, see Part IV.C --- and concludes that their summary judgment motion is likely to be granted, depending, though, on whether the parties agree that a particular piece of evidence may be considered part of the record here.  See Part IV.C.[9]

---

[8]  The Defendants at one point mention that the Plaintiff did not have a certain professional license.  See Motion for Summary Judgement at 4-5.  But they do not develop an argument as to why this might matter.  For example, they do not contend that the Plaintiff was paid less than other employees because they had the license and he did not.  In a similar vein, the Defendants point to evidence that the Plaintiff was less trusted than others might have been.  See Motion for Summary Judgement at 31. But this is put forward as an explanation for why the Plaintiff did not attend certain meetings, see id., not why he was paid less.

[9]  A bit of background on the referenced piece of evidence.  In the materials the parties submitted to the Court, there was mention of an "affirmative action" complaint the Plaintiff said he filed with the City.  See Brief in Opposition at 26, 35; Adams Deposition at 213:2-217:7, 283:21-285:18, 289:18-25, 294:4-12, 309:6-15; Plaintiff's Response to Defendant's Statement of Material Fact ¶¶ 36-38, 56, 91.  The complaint seemed potentially important, but the Court could not find it --- and entered an order directing the parties to provide it.  It was provided earlier this month by the Plaintiff.  See Plaintiff's Letter (August 8, 2024) at Exhibit 1 (from here "Plaintiff's Letter").  The Plaintiff's view is presumably that

A.   **Federal Law**

The Plaintiff, as noted, presses an ADEA hostile work environment claim.  See Complaint ¶¶ 73, 88. The Third Circuit has not yet determined whether such a claim can be made under the ADEA.  See Howell v. Millersville Univ. of Pa., 749 F. App'x 130, 135 (3d Cir. 2018); Culler v. Sec'y of U.S. Veterans Affs., 507 F. App'x 246, 249 n.3 (3d Cir. 2012).

But put that aside for now.  The Court of Appeals has on a number of occasions assumed arguendo that a hostile work environment claim can go forward under the ADEA.  See Howell, 749 F. App'x at 135; Culler, 507 F. App'x at 249 n.3.  And the Court takes that same tack here.

To prevail on an assumed ADEA hostile work environment claim, a plaintiff "must show that his workplace was permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." Culler, 507 F. App'x at 249 (cleaned up).

There is a causal element, too: the hostile environment must be "because of the employee's protected status or activity." Id. (cleaned up); see also Stovall v. Grazioli, 2023 WL 3116439, at *2 (3d Cir. Apr. 27, 2023) ("protected status [must have] factored into h[is] employer's challenged actions"); Nardella v. Phila. Gas Works, 621 F. App'x 105, 107 (3d Cir. 2015) ("[a] hostile environment claim . . . requires a showing of some causal connection between . . . membership in a protected class and . . . alleged mistreatment"); Mandel v. M&Q Packing Corp., 706 F.3d 157, 167 (3d Cir. 2013) (similar); Andreoli v. Gates, 482 F.3d 641, 643 (3d Cir. 2007) (similar).[10]

---

what was provided to the Court is an authentic copy of his affirmative action complaint.  But the Defendants have objected to the Court considering the complaint, asserting that it was not produced to them in discovery.  See Defendants' Letter (August 8, 2024).

[10]  In analyzing the ADEA hostile work environment claim, the Court pulls from the caselaw developed in the context of Title VII hostile work environment claims.  This is because "Title VII and the [ADEA] are comparable in many contexts," and the Third Circuit has relied on cases from one statute when analyzing the other.  See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 135 n.4 (3d Cir. 2006) (cleaned up).

B.   **State Law**

How can a plaintiff make out a hostile work environment claim under the LAD?  By proving that "the complained-of conduct (1) would not have occurred but for the employee's [protected status]; and it was (2) severe or pervasive enough to make a (3) reasonable [person] believe that (4) the conditions of employment are altered and the working environment is hostile or abusive."  Cutler v. Down, 196 N.J. 419, 430 (2008) (cleaned up).

This is an in-all-the-circumstances analysis, see id., including a look to "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Id. at 432.

C.   **Analysis**

To support his hostile work environment claim, the Plaintiff points to evidence that: (1) he did not get a response to a salary complaint he made, (2) he was kept out of certain meetings, (3) he got parking tickets and summonses, and (4) during the early weeks of the Covid-19 pandemic, he was not given a laptop.  See Brief in Opposition at 23-27.

These are analyzed below.

1.   **The Salary Complaint**

The Plaintiff's first piece of evidence: he did not hear back after sending a letter to the Mayor on August 12, 2017, stating that his salary was too low and that he should receive a raise. See Brief in Opposition at 24-25.

But the letter and the lack of response to it cannot support an age-based hostile workplace claim.  This is because the letter did not mention age or age discrimination in any way.  See Foner Cert. Exhibit 6.[11]  And "[a] hostile environment claim . . . requires a showing of some causal connection [with] . . .

---

[11]  The Plaintiff's letter complained that his salary was not being raised because he had spoken against hiring a potential employee he thought was not qualified for a particular job.  See Foner Cert. Exhibit 6.

membership in a protected class[.]" <u>Nardella</u>, 621 F. App'x at 107 (3d Cir. 2015).[12]

---

[12]  The Plaintiff may also be arguing that his complaint was a protected activity --- and the workplace became hostile in retaliation for his making it.  As a general matter, arguments along these lines can work.  <u>See</u> <u>Culler</u>, 507 F. App'x at 249.  But not here.  Why?  The Plaintiff's complaint did not mention his age, and therefore cannot be counted as protected activity.  Federal law is crystal clear on this point.  <u>See</u> <u>Qin</u> v. <u>Vertex, Inc.</u>, 100 F.4th 458, 476 (3d Cir. 2024) ("our precedent requiring opposition to the alleged unlawful conduct 'not be equivocal' precludes retaliation claims where the employee fails to communicate to the employer his belief that he suffered discrimination" because of his protected status); <u>Daniels</u> v. <u>Sch. Dist. of Phila.</u>, 776 F.3d 181, 194-95 (3d Cir. 2015) (no protected activity when the plaintiff "fails to demonstrate that she related her complaints to age or race discrimination such that the complaints could have qualified as protected activity under the anti-discrimination statutes" but protected when the plaintiff referenced "ageist comment[s]" and "ageism" in the complaint) (cleaned up); <u>Sanchez</u> v. <u>SunGard Availability Servs. LP</u>, 362 F. App'x 283, 287-88 (3d Cir. 2010) (vague remarks about discrimination, harassment, and bullying did not constitute protected activity because Third Circuit Law provides "complaints must be specific enough to notify management of the particular type of discrimination at issue in order to constitute 'protected activity'") (cleaned up); <u>Barber</u> v. <u>CSX Distrib. Servs.</u>, 68 F.3d 694, 701-02 (3d Cir. 1995) (a letter that did not "explicitly or implicitly allege that age was the reason for the alleged unfairness" of awarding a position to a less qualified person was not protected activity under the ADEA because a complaint "of unfair treatment does not translate into a charge of illegal <u>age</u> discrimination"); <u>see</u> <u>also</u> <u>Kaprowski</u> v. <u>Esti Foods, LLC</u>, 2022 WL 2289559, at *5 (D.N.J. June 25, 2022); <u>Phillips</u> v. <u>Starbucks Corp.</u>, 624 F. Supp. 3d 530, 547 (D.N.J. 2022); <u>Ayres</u> v. <u>MAFCO Worldwide LLC</u>, 2020 WL 4218395, at *6 (D.N.J. July 23, 2020); <u>Wadley</u> v. <u>Kiddie Acad. Int'l</u>, 2018 WL 4732479, at *6 (E.D. Pa. Oct. 1, 2018).  And while the New Jersey Supreme Court has not yet weighed in, <u>see</u> <u>Henry</u> v. <u>N.J. Dep't of Hum. Servs.</u>, 204 N.J. 320, 335 n.5 (2010), the cases strongly suggest that there is no daylight as to this point between federal and New Jersey law.  <u>See</u>, <u>e.g.</u>, <u>Dunkley</u> v. <u>S. Coralluzzo Petroleum Transps.</u>, 437 N.J. Super. 366, 377 n.1 (App. Div. 2014) <u>remanded on alternative grounds</u> 221 N.J. 217; <u>Figueroa</u> v. <u>Union Cnty. Sheriff's Dep't</u>, 2017 WL 461294, at *4-5 (N.J. Super. Ct. App. Div. Feb. 3, 2017); <u>see</u> <u>also</u> <u>Phillips</u>, 624

     2.  <u>**Meetings**</u>

Next, the Plaintiff argues his exclusion from certain meetings because of his age contributed to a hostile work environment. <u>See</u> Brief in Opposition at 25.

In particular, the Plaintiff testified that starting in 2017, he was excluded from certain senior-level weekly meetings, which he previously attended when his department head was unable to.  <u>See</u> Adams Deposition 247:1-7; <u>see also</u> <u>id</u>. at 274:1-283:4 (describing 2018 arrival of a new supervisor who also told the Plaintiff not to attend weekly meetings when the department head could not be there); Foner Cert. Exhibit 8.[13]

Not being invited to meetings can sometimes contribute to a hostile work environment.  <u>See</u> <u>Leclair</u> v. <u>Donovan Spring Co., Inc.</u>, 2018 WL 6519074, at *5 (D.N.H. Dec. 11, 2018) ("[d]epending on the nature of the meetings and their importance to her work, [being excluded from them] may . . . contribute to a retaliatory hostile work environment").

But there are two problems with the Plaintiff's argument on this point.

The <u>first</u> is that the Plaintiff has not put forward evidence as to how frequently he was kept out of meetings.  Maybe the department head was unable to attend the weekly meeting every third or fourth week.  Or maybe it was every third or fourth month.  The Third Circuit has held that these how-often questions can tip the scales.  <u>See</u> <u>Griffin</u> v. <u>De Lage Landen Fin. Servs., Inc.</u>, 219 F. App'x 245, 247 (3d Cir. 2007) (holding

---

F. Supp. 3d 530 at 547 (construing New Jersey law); <u>Cohen</u> v. <u>BH Media Grp., Inc.</u>, 419 F. Supp. 3d 831, 861 (D.N.J. 2019) (same); <u>Ucar</u> v. <u>Cinar Foods Inc.</u>, 2018 WL 1037464, at *2 (D.N.J. Dec. 19, 2018) (same); <u>Broad</u> v. <u>Home Depot U.S.A., Inc.</u>, 2016 WL 3566959, at *7 (D.N.J. June 30, 2016) (same); <u>cf.</u> <u>generally</u> <u>Grande</u> v. <u>St. Clare's Health Sys.</u>, 230 N.J. 1, 21 (2017) ("In assessing allegations of unlawful discrimination, this Court has looked to federal law as a key source of interpretive authority.") (cleaned up); <u>Bergen Com. Bank</u> v. <u>Sisler</u>, 157 N.J. 188, 200 (1999) (same).

[13]  The Defendants argue the Plaintiff was kept out of meetings because he did not sign required paperwork, was disruptive, and there were concerns he was sharing confidential information from the meetings.  <u>See</u> Adams Deposition at 250:18-252:7; Pennington Deposition at 53:12-20.  This does not need to be taken up here, given the Court's resolution of the relevant issues.

that being excluded from eight meetings was not severe or pervasive enough to create a hostile work environment).

Second, and much more importantly, the Plaintiff has put forward no sufficient evidence that he was kept out of meetings because of his age.

The Plaintiff testified that he believes he was excluded from meetings because of age --- as a relatively older employee, he says, he was viewed as having too much integrity and was therefore barred.  See Adams Deposition at 271:13-272:25; 276:17-280:25.

But this sort of personal belief as to why something happened is insufficient, unless it is accompanied by other evidence.  See Willis, 808 F.3d at 646 ("A passing reference to retirement age and [the plaintiff's] own belief that age discrimination occurred do not comprise sufficient evidence" to survive summary judgment); Waggoner v. City of Garland, 987 F.2d 1160, 1164 (5th Cir. 1993) ("a plaintiff's subjective belief that his discharge was based on age is simply insufficient to establish an ADEA claim"); Chappel v. GTE Prods. Corp., 803 F.2d 261, 268 (6th Cir. 1986) ("Mere personal beliefs, conjecture and speculation are insufficient to support an inference of age discrimination."); see also Saggiomo v. J. Ambrogi Food Distrib., Inc., 2023 WL 3092125, at *9 (D.N.J. Apr. 26, 2023); Rossi v. All Holding Co., Inc., 2014 WL 346934, at *15 (M.D. Pa. Jan. 30, 2014); Tillman v. Redevelopment Auth. Of Phila., 2013 WL 5594701, at *10 (E.D. Pa. Oct. 11, 2013); cf. Taylor v. Cherry Hill Bd. of Educ., 85 F. App'x 836, 839 (3d Cir. 2004).

But here, there is no other evidence.  Discovery has come and gone, and there is no suggestion from conversations or from emails or from any other source that City Hall employees disparaged older people or older employees, or ever made any age-related comments about the Plaintiff or others.  In the absence of any such evidence, the Plaintiff's stand-alone belief as to why he was excluded from meetings is not enough to go on. See Willis, 808 F.3d at 647; Waggoner, 987 F.2d at 1164; Chappel, 803 F.2d at 268; Saggiomo, 2023 WL 3092125, at *9; Rossi, 2014 WL 346934, at *15; Tillman, 2013 WL 5594701, at *10.

*     *     *

As to exclusion from meetings, the Plaintiff presses another argument, too.  He says that he was excluded from meetings because he complained of age discrimination.  See Brief in Opposition at 25.

What complaints?  The Plaintiff points to four kinds.

13

<u>First</u>, the Plaintiff's August 12, 2017 letter to the Mayor.  <u>See</u> Brief in Opposition at 24-25.  But this, as noted, did not mention age.  <u>See</u> Foner Cert. Exhibit 6; <u>see</u> <u>generally</u> footnote 12 (explaining that doing so is required).

<u>Second</u>, the Plaintiff notes some other written complaints he made.  <u>See</u> Plaintiff's Statement of Material Fact ¶ 39.  But same problem: these do not refer to age, either.  <u>See</u> <u>id</u>.; Foner Cert. Exhibits 5-7; <u>see</u> <u>generally</u> footnote 12 (explaining that doing so is required).

<u>Third</u>, the Plaintiff says he complained to other employees about pay disparity issues, and in support of this argument cites to a particular portion of the deposition testimony of one of the individual Defendants.  <u>See</u> Plaintiff's Statement of Material Fact ¶¶ 40-42.  But the cited portions of the deposition transcript only indicate that the Plaintiff complained about his salary.  There is no suggestion that his age came up in the conversation, or that age discrimination did.  <u>See</u> Smith Deposition 69:1-76:17, 80:1-84:24; <u>see</u> <u>also</u> Baraka Deposition at 33:1-24, 51:1-52:7 (same); <u>see</u> <u>generally</u> footnote 12 (explaining that raising age is required).

<u>Fourth</u> and finally, the Plaintiff suggests that he was kept out of meetings because he filed an "affirmative action complaint." <u>See</u> Brief in Opposition at 26; <u>see</u> <u>generally</u> footnote 9.

But the Plaintiff was told not to come to meetings in 2017.  <u>See</u> Adams Deposition at 247:1-7.  And then told the same thing by a new boss in 2018.  <u>See</u> <u>id</u>. at 276:17-280:25.  The affirmative action complaint was filed by the Plaintiff in October 2019. <u>See</u> Plaintiff's Letter Exhibit 1, at 1.  It could not have been a cause of his meeting exclusion.  It came after the fact.

And more fundamentally: the affirmative action complaint did not mention age or age discrimination.  <u>See</u> Plaintiff's Letter, Exhibit 1.  Indeed, there was a box on the complaint form for the Plaintiff to check, to indicate that the complaint was based on an age-related issue; the Plaintiff did not check it.  <u>See</u> <u>id</u>. at 1; <u>see</u> <u>generally</u> footnote 12 (explaining that raising age is required).[14]

---

[14]  If the Court were not able to consider the affirmative action complaint, <u>see</u> footnote 9, that would alter the analysis.  The Court would have no way to know when the complaint was made --- and so the Court would not be able to rely on the affirmative action complaint coming after the meeting exclusions.  And if the Court could not consider the complaint, there would be no

       \*     \*     \*

Bottom line: putting aside the Plaintiff's stand-alone personal belief, as the Court must, see Willis, 808 F.3d at 647, the Plaintiff has not come forward with evidence that he was excluded from meetings because of his age or because of any age discrimination complaints.  This means that the Plaintiff's meeting-exclusion claims do not add anything to the mix here. See, e.g., Stovall, 2023 WL 3116439, at *2; Nardella, 621 F. App'x at 107; Mandel, 706 F.3d at 167; Andreoli, 482 F.3d at 643.

### 3.   Summonses and Tickets

The Plaintiff also argues his hostile work environment is supported by evidence that (a) starting in January 2019 he began receiving summonses for municipal code violations for his home, and (b) starting in March 2019 he began receiving parking tickets.  See Brief in Opposition at 26-27. Per the Plaintiff, this was done because of his complaints of age discrimination. See id.; Adams Deposition at 293:15-295:7.

But this argument is not persuasive.  As noted above, most of the Plaintiff's complaints did not mention age discrimination. See Part IV.C.2.

And moreover, some of the complaints cited by the Plaintiff are out of bounds as a matter of timing.  The affirmative action complaint (which did not mention age discrimination) was filed after the parking tickets and summonses.  See Part IV.C.2.  And so too with the Plaintiff's Equal Employment Opportunity Commission complaint --- it mentioned age discrimination, but was filed in November 2019, around seven or eight months after the tickets and summonses.  See EEOC Complaint; see generally Alja-Iz v. U.S. Virgin Islands Dep't of Educ., 626 F. App'x 44, 47 (3d Cir. 2015) ("[the plaintiff] pleaded himself out of court, as his complaint alleged that the Department made its hiring decision before he purportedly engaged in the protected activity of filing a complaint" and therefore he could not establish a causal connection to the protected activity); Glanzman v. Metro. Mgmt. Corp., 391 F.3d 506, 516 (3d Cir. 2004) (noting a retaliation claim cannot succeed when the adverse action comes before the protected activity); Robinson v. City of Pittsburgh, 120 F.3d 1286, 1301 (3d Cir. 1997) overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548

─────────────────────

basis in the record for the Court to understand that the complaint said nothing about age or age discrimination.

U.S. 52 (2006) ("much of what [the plaintiff] characterizes as retaliation for her EEOC complaint is in fact alleged to have occurred <u>before</u> she filed the complaint . . . since it happened before [the plaintiff] filed her complaint, [the plaintiff] cannot establish a causal connection between her complaint and the conduct.").

### 4.   <u>Laptop</u>

Finally, the Plaintiff points to the asserted slowness of the City to provide him with a laptop supporting his hostile work environment claim.  <u>See</u> Brief in Opposition at 27.

The facts from the Plaintiff's perspective: with the March 2020 onset of the Covid-19 pandemic as the rough starting point, the Plaintiff did not receive a laptop for six or seven weeks.  <u>See</u> Adams Deposition at 310:8-18, 313:2-23; Plaintiff's Statement of Material Facts ¶¶ 59-60.  Other employees got one more quickly because, per the Plaintiff, there were not enough laptops at first to go around, until a new order of computers came in.  <u>See</u> Adams Deposition at 317:1-25.  The Plaintiff testified that he should have been in the initial group of people to receive a computer, because of his relatively senior position.  <u>See</u> <u>id</u>.

But there is no suggestion in the record that this had anything to do with age or age discrimination.  Again: no telling comments or emails, no evidence that anyone chose the Plaintiff for the second laptop group because of his age.  The Plaintiff's laptop assertion can therefore be put to one side.  It is not a data point that is connected to age discrimination --- and so it cannot be tallied up as proof the Plaintiff was subjected to a hostile work environment because of age discrimination.  <u>See</u>, <u>e.g.</u>, <u>Stovall</u>, 2023 WL 3116439, at *2; <u>Nardella</u>, 621 F. App'x at 107; <u>Mandel</u>, 706 F.3d at 167; <u>Andreoli</u>, 482 F.3d at 643.

To be sure, the Plaintiff also seems to argue that the six or seven week laptop delay was related to his November 2019 EEOC complaint, which did invoke age discrimination.  <u>See</u> Brief in Opposition at 27.

But this argument does not work.

To see why, note that the Plaintiff's hostile work environment claim assertedly stands on four clusters of evidence.  <u>See</u> Part IV.C; Brief in Opposition at 23-27.

But three fell away on closer analysis.  The no-response to the Plaintiff's August 2017 letter, the exclusion from meetings, and the summonses/parking tickets --- these cannot be chalked up to age discrimination because there is no proof put forward they

had something to do with either age or age discrimination.  See Parts IV.C.1-3.

That leaves behind one thing: a six or seven week delay in getting a laptop.  Standing alone, that cannot amount to a hostile work environment.  And all the more so because the evidence is the Plaintiff got a laptop when a new computer shipment came in, see Adams Deposition at 317:1-25, and because the short delay in getting a computer came during a period of intense and severe nationwide disruption --- from March 2020 until around mid-April of that same year.

To establish that he worked in a hostile environment, the Plaintiff has to show the discriminatory conduct was "severe or pervasive."  Whitesell v. Dobson Commc'n, 353 F. App'x 715, 717 (3d Cir. 2009); see also Cutler, 196 N.J. at 430.

And the caselaw makes clear that a slow-to-arrive laptop cannot meet this standard.  See Whitesell, 353 F. App'x at 717 (holding the comments such as "come on, old lady keep up" and that the Plaintiff "needs glasses" and questions of whether she remembered older television shows were insufficient to state a claim for hostile work environment); Nitkin v. Main Line Health, 67 F.4th 565, 571-77 (3d Cir. 2023) (holding that seven offensive comments, including being required to "take part in sexually related conversations" that brought the plaintiff to tears, which took place over three and half years, was not severe or pervasive); Onukogu v. N.J. State Judiciary Essex Vicinage, 2023 WL 3162175, at *14-15 (N.J. Super. Ct. App. Div. May 1, 2023) (change in supervisors, comments about changing the plaintiff's positive review, an unfavorable year end performance review, and investigation into the plaintiff's conduct after a complaint was made --- were insufficiently severe or pervasive to constitute a hostile work environment); Prioli v. County of Ocean, 2021 WL 4473159, at *17 (D.N.J. Sept. 30, 2021) (holding the rejection of a grievance, referring to the Plaintiff as "B" in an Instagram video, and graffiti on a doorknob was insufficient for a hostile work environment); Larochelle v. Wilmac Corp., 210 F. Supp. 3d 658, 683-85 (E.D. Pa. 2016) (holding that the plaintiff having her shoulders rubbed, being hugged from behind, and being screamed at was not severe or pervasive); Busch v. Oswayo Valley Sch. Dist., 2016 WL 5394085, at *9-10 (W.D. Pa. Sept. 27, 2016) (defendant refusing to accommodate the plaintiff's disability, requiring her to remains standing throughout the workday, and disciplining her for sitting on three occasions was insufficient for a hostile work environment claim); Marriott v. Audiovox Corp., 2006 WL 3805145, at *15 (W.D. Pa. Dec. 22, 2006) ("The inequity in pay and

defendant's ignoring her complaints with respect to the pay inequity are not a sufficient basis for a court to conclude that there was an objectively hostile work environment in this case."); Waite v. Blair, Inc., 937 F. Supp. 460, 468 (W.D. Pa. 1995) (allegations of yelling, inconsiderate treatment, and co-workers not listening to or taking the plaintiff seriously were not enough for a hostile work environment claim); Taylor v. Haaland, 2022 WL 990682, at *4-5 (D.D.C. Mar. 31, 2022) (holding that "(1) monitoring [the plaintiff's] arrival and departure time and using her coworkers to assist with this monitoring; (2) allowing [the plaintiff's] coworkers to taunt her; (3) limiting her lunch time to a specific hour; (4) proposing a five-day suspension without pay and later expanding the suspension to fourteen days; (5) offering her an 'unconscionable' settlement agreement, which [the Plaintiff] characterized as an 'ultimatum to take or leave it'; (6) suspending her for twelve days; and (7) investigating her employment history" was insufficiently severe or pervasive); Harewood v. N.Y.C Dep't of Educ., 2021 WL 673476, at *13 (S.D.N.Y. Feb. 22, 2021) (holding that allegations of changes to lunch time, not approving a program, hassling the plaintiff about an elevator key, two negative performance reviews and two discipline letters was not sufficiently severe or pervasive); Tyes-Williams v. Whitaker, 361 F. Supp. 3d 1, 7-10 (D.D.C. 2019) (holding that allegations of employees being cold and unfairly critical, being yelled at in front of colleagues on two occasions, being told to stop performing certain work, being required to obtain permission to work on new tasks, vague performance standards, a delay in approving her request to change duty station, only approving one work from home day a week instead of two --- were not sufficient for a hostile work environment claim); Jimenez v. McAleenan, 395 F. Supp. 3d 22, 36-38 (D.D.C. 2019) (holding that the plaintiff's supervisors falsely accusing the plaintiff of not submitting weekly reports, lying about speaking with IT about a computer problem, breaking email policy, being closely supervised, having to meet impossible deadlines, being denied the opportunity to attend trainings other employes attended, being the only employee to be denied access to a data network, and being suspended for three days --- were not sufficiently severe or pervasive); Townsend v. United States, 236 F. Supp. 3d 280, 313 (D.D.C. 2017) (holding that having to share an office with a former subordinate and facing comments from others that he should step aside for younger employees was not sufficient for a hostile work environment claim).

Additionally, even assuming arguendo that the Plaintiff could establish he faced a severe or pervasive hostile work environment, he has not adequately shown that "[]he suffered

intentional discrimination <u>because</u> of h[is] protected activity." <u>Jensen</u> v. <u>Potter</u>, 435 F.3d 444, 449 (3d Cir. 2006) (emphasis added) <u>overruled in part on other grounds by</u> <u>Burlington N. & Santa Fe Ry. Co.</u>, 548 U.S. 53. To determine if the discrimination was "<u>because</u> of h[is] protected activity" courts tend "to focus on two factors: (1) the temporal proximity between the protected activity and the alleged discrimination and (2) the existence of pattern of antagonism in the intervening period." <u>Id</u>. at 449-450 (emphasis added); <u>see also id</u>. at 449 n.2; <u>Salvero</u> v. <u>City of Elizabeth</u>, 2017 WL 5983197, at *8 (N.J. Super. Ct. App. Div. Dec. 1, 2017) (drawing on federal law and holding "[w]here the timing alone is not unusually suggestive, the plaintiff must set forth other evidence to establish a causal link. For example, where there is a lack of temporal proximity, circumstantial evidence of a pattern of antagonism following the protected conduct can also give rise to the inference of causation") (cleaned up); <u>Toll</u> v. <u>Sills Cummis & Gross, P.C.</u>, 2013 WL 3305450, at *7 (N.J. Super. Ct. App. Div. July 2, 2013) (same); <u>Lafranco</u> v. <u>Avaya, Inc.</u>, 2009 WL 2850747, at *9 (N.J. Super. Ct. App. Div. Sept. 8, 2009) (same); <u>cf</u>. <u>generally</u> <u>Grande</u>, 230 N.J. at 21 ("In assessing allegations of unlawful discrimination, this Court has looked to federal law as a key source of interpretive authority.") (cleaned up); <u>Sisler</u>, 157 N.J. at 200 (same).

Here, the Plaintiff has sought to show a causal link not based on timing, but solely by establishing a "pattern of antagonism" following the EEOC complaint. <u>See</u> Brief in Opposition at 27, 29.[15]

But given that the only events that took place after the EEOC complaint were not receiving a laptop and the Plaintiff's termination over two years later --- the Plaintiff has not established the requisite "pattern." <u>See</u> <u>Bartos</u> v. <u>MHMH Correctional Servs., Inc.</u>, 454 F. App'x 74, 79 (3d Cir. 2011) ("though [the plaintiff] was subject to several disciplinary actions in the period between [the protected activity] and her termination, these actions do not amount to a pattern of antagonism as they were neither consistent and continuous during the intervening period nor does [the plaintiff] offer any basis for linking the disciplinary actions to [the protected

---

[15]  This litigation approach may well have made sense. <u>See</u> <u>Williams</u> v. <u>Phila. Hous. Auth. Police Dep't</u>, 380 F.3d 751, 760 (3d Cir. 2004) <u>superseded by statute on alternative grounds</u> (holding that when over two months elapsed between the complaint and the conduct the timing was not "unusually suggestive" of retaliation).

activity]"); Weston v. Pennsylvania, 251 F.3d 420, 432 (3d Cir.
2001) overruled in part on other grounds by Burlington N. &
Santa Fe Ry. Co., 548 U.S. 53 (holding that two suspensions
without pay, for one and three days, within three months of each
other were not a pattern of antagonism because there was no
"evidence" that the "actions were related"); Dickerson v.
Keypoint Gov't Sols., Inc., 2017 WL 3034720, at *9 (D. Del. July
18, 2017) ("two isolated incidents—one in 2011 and one in 2013"
were insufficient to show a pattern of antagonism); DeGroat v.
DeFebo, 87 F. Supp. 3d 706, 729 (M.D. Pa. 2015) (holding there
was no pattern of antagonism when the alleged fourteen actions
began six months after the protected activity and occurred
sporadically); Alers v. City of Philadelphia, 919 F. Supp. 2d
528, 549 (E.D. Pa. 2013) (holding that initiating two rule
violation investigations was not sufficient to establish a
pattern of antagonism); cf. Doyle v. United Auto. Aerospace &
Agricultural Implement Workers of Am. Local 1069, 761 F. App'x
136, 139-40 (3d Cir. 2019) (holding that under the LMRDA, which
creates a cause of action for retaliation that requires showing
causation --- which can be shown through temporal proximity or
pattern of antagonism, two incidents of filing a complaint or
charges against the plaintiff was insufficient to show a pattern
of antagonism).

**V.   Conclusion**

The Defendants' motion for summary judgement as to unequal pay
is denied, for the reasons stated in Part III.

The Defendants' motion for summary judgment as to a hostile work
environment is likely to be granted, though this depends on the
status of a particular piece of evidence described in footnote
9.  See Part IV.  The parties will be permitted to weigh in on
that piece of evidence before the Court issues its final
decision, on a timeline to be set by an order that will issue
today.

Because the Defendants' summary judgment motion as to
retaliation likely (a) depends in part on the referenced piece
of evidence and (b) is impacted by today's decision, the Court
will deny the motion as to the Plaintiff's retaliation claims
without prejudice --- so that the parties may file, as may be
appropriate in their judgment, renewed motion papers.

IT IS on this 29th day of August, 2024, so **ORDERED**.

_____

Michael E. Farbiarz, U.S.D.J.